UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTONIO GARZA,

          Petitioner,          Case No. 2:20-cv-175

v.                                          Honorable Paul L. Maloney

MIKE BROWN,

          Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.       Factual allegations**

Petitioner Antonio Garza is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On December 1, 2011, following a one-day bench trial in the Wayne County Circuit Court, Petitioner was convicted of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a, and assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84. Petitioner did not show up for his sentencing on December 1, 2012. It is not clear from the petition, the circuit court docket, or the appellate court dockets why Petitioner failed to show up. He showed up eventually. On June 19, 2018, the court sentenced Petitioner to prison terms of 2 to 10 years for AGBH and 4 years, 9 months to 20 years for first-degree home invasion.

Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). At some point between September 11, 2020, the date Petitioner signed the disbursement authorization he attached to his petition (ECF No. 1-1, PageID.15), and September 14, 2020, the date of the postmark on the envelope containing the petition (ECF No. 1, PageID.13), Petitioner filed his habeas corpus petition. The petition was received by the Court on September 16, 2020. The petition was timely filed using any of those dates as the filing date.

The petition raises three grounds for relief, as follows:

I.   Whether there was insufficient evidence presented at trial by the prosecution to establish beyond a reasonable doubt that Petitioner committed home invasion.

II.  Whether or not the Petitioner's guaranteed federal and state Constitutional rights to due process of law to have a fair and impartial trial were clearly violated when Trial Judge Vera Massey Jones abused her discretion when her clearly erroneous fact finding decision was palpably and grossly violative of facts and logic that do not accurately portray the factual

        background of the case when she chose an outcome falling outside the principle range of reasonable outcomes by repeatedly giving the Complainant creditability to obvious blatantly inconsistent statements and trial testimony; and Sentencing Judge Shannon Nicol Walker's failure to correct the inaccurate sentence information and Prior Record Variables and Offense Variables which effected his sentencing guidelines and sentence.

   III.    Whether or not the Petitioner's guaranteed federal and state Constitutional rights to due process of law to have a fair and impartial trial and the effective assistance of counsel were clearly violated when Trial Counsel Wright Blake failed to adequately investigate, advise, and discuss the ongoing negotiation plea bargaining process and the consequence of the outcome of the potential plea bargain offer and the failure to adequately investigate the defense Res Gestate [sic] witnesses and call them during trial to lay a proper foundation to impeach the complainant's inconsistent statements and trial testimony and his failure to properly prepare a substantial defense of his actual innocence of First Degree Home Invasion and Assault With Intent to do Great Bodily Harm Less Than Murder and non-deadly use of self-defense.

(Pet., ECF No. 1, PageID.5-8.)

**II.   AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Petitioner has raised his habeas issues in this Court exactly as he raised them in the Michigan appellate courts. He does not respond to the court of appeals' resolution of his claims in any respect. He does not explain how the court of appeals' determinations were contrary to, or an unreasonable application of, clearly established federal law, nor does he offer evidence, much less clear and convincing evidence to rebut the presumption that the factual determinations by the court of appeals are correct.

**III. Discussion**

    **A. Sufficiency of the evidence regarding home invasion (habeas issues I and II)**

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1]

---

[1] Although Jackson involved a sufficiency of the evidence review of a jury verdict, the same standard is applied to verdicts rendered in bench trials. *See United States v. Bronzino*, 598 F. 3d 276, 278 (6th Cir. 2010).

5

This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency challenge, the Michigan Court of Appeals applied the following standard:

> "When reviewing an argument following a bench trial that insufficient evidence existed . . . 'this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'" *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018), quoting *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995). That is, "evidence is sufficient to convict a defendant when a rational factfinder could determine that the prosecutor proved every element of the crimes charged beyond a reasonable doubt."

6

> *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999). This Court will not, however, interfere with the factfinder's role of resolving credibility disputes. *Muhammad*, 326 Mich App at 60.

*Garza*, 2020 WL 359644 at *1. Although the court of appeals cited state authority in support of the standard, the standard it applied is functionally identical to the Jackson standard. Accordingly, it cannot be said that the standard the state appellate court applied is contrary to clearly established federal law.

Moreover, the state court applied the standard exactly as *Jackson* advises: the court identified the elements of the offense and considered the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find those elements beyond a reasonable doubt. The court of appeals identified the elements of first-degree home invasion as follows:

> (1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling.

*Id*. Petitioner argued that the prosecution failed to present sufficient evidence regarding the "breaking and entering" element. He claimed "that the complainant's testimony that [Petitioner] 'came flying through' his door was too implausible to be believed considering the fact that the complainant was intoxicated at the time and the fact that a police officer did not recall seeing any damage to the door . . . [the] complainant's testimony was too incredible to be believed." *Id*.

The court of appeals recognized that Petitioner's argument asked the court to do that which it could not: "interfere with the factfinder's role of resolving credibility disputes." *Id*. at *2. The court reviewed the complainant's testimony that Petitioner "just flew in. He kind of like ran into my house. Bust[ed] the lock on the door and ran in." *Id.* Petitioner testified that he

7

did not break the lock, but that the complainant invited him in. The complainant denied inviting Petitioner into the home.

The trial court "expressly found that [Petitioner] 'entered [the complainant's] house without permission . . . .'" *Id*. There was certainly sufficient evidence to support that finding beyond a reasonable doubt if one credited the testimony of the complainant and found the testimony of Petitioner to be incredible. Therefore, Petitioner has failed to demonstrate that the state courts' determinations regarding sufficiency are contrary to, or an unreasonable application of, the clearly established federal law of *Jackson*. Indeed, it is Petitioner's argument that invites this Court to proceed contrary to *Jackson* by viewing the evidence in a light that favors Petitioner and overturning the state courts' credibility determinations.

### B.     Offense variable and prior record variable scoring at sentencing (habeas issue II)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature);

*Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

To the extent Petitioner intends to suggest that, as a result of the scoring, his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). *Milbourn* plainly was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, any claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, a claim that Petitioner's sentence was disproportionate under the Eighth Amendment would be without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence

9

imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Petitioner also fails to demonstrate a due process violation. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980; *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

The Michigan Court of Appeals described Petitioner's sentencing challenge as follows:

> [Petitioner] argues that . . . his sentencing guidelines scores [were improperly calculated] on his Prior Record Variables [PRVs]" because [he] did not have any

> convictions in Dearborn and the offense variables (OVs) regarding possession of a weapon because "[t]he Defendant-Appellant used his bare fists only."  Also, defendant challenges the scoring of these variables on appeal.  Alternatively, he argues that resentencing is required because the sentencing court relied on inaccurate information in scoring prior record variable (PRV) 5 and offense variable (OV) 1.  He asserts that resentencing is required because "OV 1 has been inaccurately scored [at] 10 points" and "OV 2 has been inaccurately scored [at] 1 point."  OV 1 is generally to be scored at 10 points if the victim was "touched" by a weapon other than a knife or some sort of harmful substance or device. See MCL 777.31(1)(d).  OV 2 is generally to be scored at one point if the defendant possessed or used a potentially lethal weapon other than a harmful substance or device, a gun, or a knife.  See MCL 777.32(1)(d).  Defendant also argues that resentencing is required because PRV 5 was inaccurately scored at five points.  PRV 5 is to be scored at five points if "[t]he offender has 2 prior misdemeanor convictions or prior misdemeanor juvenile convictions."  MCL 777.55(1)(d).

*Garza*, 2020 WL 359644 at *4. Petitioner's sentencing challenge might be construed as a claim that the sentencing court based its scoring of the offense variables and prior record variables on "misinformation of constitutional magnitude."

### 1.     Offense variables

The court of appeals rejected Petitioner's challenge regarding the scoring of the offense variables because that scoring was not, as Petitioner argued, based on inaccurate information.  The court explained:

> OV 1 is generally to be scored at 10 points if the victim was "touched" by a weapon other than a knife or some sort of harmful substance or device. See MCL 777.31(1)(d).  OV 2 is generally to be scored at one point if the defendant possessed or used a potentially lethal weapon other than a harmful substance or device, a gun, or a knife.  See MCL 777.32(1)(d). . . .  "A trial court may consider all record evidence when calculating the sentencing-guidelines range."  *People v. Savage*, ––– Mich App. ––––, ––––; ––– N.W.2d ––– (2019) (Docket No. 339417), slip op. at 6.  Regarding the OV scoring, defendant argues that both OVs were incorrectly scored based on the assumption that he used a weapon when, in fact, he "used his bare fists only . . . ."  However, the trial court expressly found that defendant used a weapon:  "It's quite obvious if you looked at this man's, the damage that was done to him, that something other than a fist was used on him.  If you look at these pictures, you can see that.  It wasn't just fist to face."  This decision was based on the complainant's testimony that defendant struck him with brass knuckles as well as photographs of his injuries after the attack.  In light of this evidence, it cannot be said that such a decision was clearly erroneous.  Thus, contrary to defendant's

11

>assertion that he "used his bare fists only," the trial court was justified in concluding that defendant used some sort of weapon for sentencing purposes.

*Garza*, 2020 WL 359644 at *4.

The fact that the judge drew inferences from conflicting evidence as to whether Petitioner used a weapon when he attacked the complainant, even if Petitioner does not agree with those inferences, does not suffice to show that the court relied upon false information. *See Carrington v. Sloan*, No. 17-3709, 2018 WL 3244026, at *2 (6th Cir. Jan. 8, 2018) ("[Petitioner's] disagreement with the trial court's view of the evidence does not establish that the trial court based its sentencing decision on materially false information.") (citing *Townsend*, 334 U.S. at 741); *Smoot v. Woods*, No. 16-2443, 2017 WL 4899812, at *7 (6th Cir. Jul. 3, 2017) ("[Petitioner's] disagreement with the state courts' view of the evidence does not establish that the trial court based its sentencing decision on materially false information."). Accordingly, with regard to the offense variable scoring, Petitioner has failed to demonstrate that the state courts' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Moreover, with regard to the underlying finding of fact that Petitioner used a weapon, Petitioner has failed to show that the finding is unreasonable on the record. Accordingly, Petitioner is not entitled to habeas relief on the sentencing challenge related to the offense variable scoring.

### 2.     Prior record variable

The Michigan Court of Appeals took a different approach to resolving Petitioner's challenge relating to the prior record variable. The court concluded any error was harmless:

>Even if we assume that defendant's argument with respect to PRV 5 is correct, i.e., that it should have been scored at zero points rather than five points, defendant's sentencing-guidelines range would not have changed. This is because both Class B offenses (including assault with intent to commit great bodily harm) and Class D offenses (including first-degree home invasion) require application of PRV Level D if the total PRV points fall between 25 and 49, and both 35 (defendant's requested total PRV score) and 40 (defendant's presumed total PRV score) fall in PRV Level

12

  D. See MCL 777.63; MCL 777.65. Stated more simply, even if defendant is correct, the applicable PRV Level would not change.

*Garza*, 2020 WL 359644 at *4.[2]

  This Court agrees that the purported error in scoring the prior record variable was harmless. On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993),[3] regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave v. McKee,* 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112, 120-21 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638.

  For the same reason the state appellate court concluded any error was harmless—because correction of the error would leave Petitioner with the exact same minimum sentence range—Petitioner cannot show that the error, if any, has a substantial and injurious effect on the result. Because the error was harmless under *Brecht*, Petitioner is not entitled to habeas relief on the claim.

---

[2] The Michigan courts have held that, if correction of a scoring error would not change the minimum guidelines range, the defendant is not entitled to resentencing and the error is harmless. *People v. Francisco*, 711 N.W.2d 44, 49 n. 8 (Mich. 2006); *People v. Davis*, 658 N.W.2d 800, 803-04 (Mich. 2003); *People v. Coakley*, No. 337318, 2018 WL 3397647, at *4 (Mich. Ct. App. Jul. 12, 2018) ("A scoring error that does not affect the guidelines range is harmless, and does not require resentencing.") (citing *Francisco* and *Davis*); *see also United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019) ("Errors that do not affect the ultimate Guidelines range or sentence imposed are harmless and do not require resentencing.").

[3] In *Davenport v. MacLaren*, 964 F.3d 448 (6th Cir. 2020), the Sixth Circuit clarified that the standard applicable to a state-court harmlessness finding is only the *Brecht* standard, not the *Brecht* standard coupled with a an evaluation of the state-court's application of the *Chapman* standard under the AEDPA standard. *Id.* at 454-59 (citing *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (holding that the *Brecht* test subsumes the limitations imposed by AEDPA) (citing *Fry*, 551 U.S. at 119-20)).

### C. Ineffective assistance of counsel

Petitioner claims that his counsel rendered constitutionally ineffective assistance in two respects: (1) counsel failed to adequately investigate, advise, and discuss the ongoing plea negotiations; and (2) counsel failed to call Petitioner's proposed witnesses—Petitioner's wife, his four-year-old child, and a third witness—to support Petitioner's claim of self-defense.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

"It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689). Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. The Sixth Circuit has

14

held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. If Plaintiff took a plea offer on counsel's deficient advice, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. If counsel's deficient advice deprives a defendant of the opportunity to accept a plea, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also Lafler v. Cooper*, 566 U.S. 156 (2012). As in *Hill*, 474 U.S. at 58, the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different. *See Lafler*, 566 U.S. at 163-168.

Moreover, the Supreme Court has recognized that when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170,

15

190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals applied the following standards to resolve Petitioner's ineffective assistance of counsel claims:

> "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).
>
> \*   \*   \*
>
> "'As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process.'" *People v Pennington*, 323 Mich App 452, 461; 917 NW2d 720 (2018) (citations omitted). To prevail on an ineffective-assistance argument with respect to the plea-bargaining process, however, "'a defendant must show the outcome of the plea would have been different with competent advice.'" *Id.* (citations omitted).

*Garza*, 2020 WL 359644, at \*2. Again, though the state appellate court cited state authorities in support of the standards the court applied, those standards are functionally identical to, and not contrary to, the clearly established federal law cited above. The only question that remains is whether the court of appeals applied those standards reasonably.

### 1. Plea negotiations

The Michigan Court of Appeals resolved Petitioner's ineffective assistance claim relating to plea negotiations as follows:

16

> On appeal, defendant does not identify any support for the notion that the outcome of the plea-bargaining process would have been different with competent or different advice. Instead, he merely claims in his Standard 4 brief that those negotiations would have resulted in the prosecution "reduc[ing] the charges [in a way] that would not send the Defendant-Appellant to prison, but instead sentence him to possibly probation, county jail time, or the Special Alternation [sic, Alternative] Incarceration Program." He continues, claiming that "he would have accepted a plea bargain that was within his correct guidelines and for reduced charges," assuming "the severe charges reduced the possibility of the Special Alternative Incarceration Program would have been available" and that "county jail time would have also been a possibility."
>
> While it is true, as defendant suggests, that there was some discussion on the record between the attorneys about a *Cobbs*[1] evaluation and the potential for county-jail time during an early-stage hearing, it is clear that these on-the-record discussions were preliminary in nature— taking place even before the case was assigned to the trial judge. Defendant's argument indicates that he is simply assuming that he could have pleaded guilty to reduced charges with guarantees of favorable sentencing; nothing in the record supports those assumptions.
>
> [1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

*Garza*, 2020 WL 359644, at *3.

The *Strickland*/*Lafler* analysis depends turns in part on whether the prosecution make a formal plea offer. *See, i.e., Ambrose v. Romanowski*, 621 F. App'x 808, 817 (6th Cir. 2015) ("In order to show defective performance such that ineffective assistance led to the offer's rejection or lapse, Ambrose must start by showing that there was an actual plea offer from the prosecutor."). But Petitioner has not shown that the prosecution ever made a plea offer. The court of appeals concluded there was no plea offer. This Court must presume that the state court's factual findings are correct. *Lancaster*, 324 F. 3d at 429. Petitioner must present clear and convincing evidence to overcome that presumption. *Id.* He has not.

Petitioner has "no right to be offered a plea . . . ." *Frye*, 566 U.S. at 148. Nonetheless, if Petitioner can show "a reasonable probability that but for counsel's errors, the Petitioner would have received a plea offer," he could show the necessary prejudice. *Byrd v. Skipper*, 940 F.3d 248, 257 (6th Cir. 2019); *see also Ross v. United States*, 339 F.3d 483, 492

17

(6th Cir. 2003) ("Petitioner's counsel was not ineffective for failing to react to a no-jailtime offer that the government never made, and Petitioner offers no evidence that his counsel (or anyone else) could have negotiated a plea deal that would have guaranteed no incarceration."). Petitioner, however, does not attempt to make that showing. According to the court of appeals, Petitioner "simply [assumes] that he could have pleaded guilty to reduced charges . . . ." *Garza*, 2020 WL 359644, at *3. Petitioner offers nothing new in his petition to overcome that determination by the Michigan Court of Appeals. Therefore, Petitioner has failed to show that the court of appeals' determination that counsel was not ineffective in plea negotiations is contrary to, or an unreasonable application of, clearly established federal law.

### 2. Counsel's failure to call Petitioner's witnesses

Finally, Petitioner contends that his counsel rendered ineffective assistance because he failed to call Petitioner's wife, Petitioner's four-year-old son, and a third witness to support Petitioner's claim of self-defense. The Michigan Court of Appeals rejected Petitioner's claim:

> "[D]ecisions regarding whether to call or question a witness are presumed to be matters of trial strategy." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015). And "[t]rial counsel's failure to call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense," i.e., "one that could have affected the outcome of the trial." *Id*. "This Court will not 'second-guess counsel on matters of trial strategy,' nor will it 'assess counsel's competence with the benefit of hindsight.'" *Id*. (citation omitted).
>
> Because this Court will not second-guess trial counsel's decision not to call the three witnesses, we could reject defendant's argument in this regard on its face. Even if we did not, however, defendant has not shown that he was deprived of a substantial defense as a result of these witnesses' failure to testify. He claims that his wife at the time would have provided background testimony regarding the babysitting arrangement for the four-year-old son at which the complainant may have mistreated the child, that his four-year-old son would have testified that the complainant "choked him with both of his hands around his neck while lifting him up off his feet until he could not breathe and passed out," and that the third witness would have testified regarding defendant's whereabouts before the incident. None of this purported testimony would have had any bearing on the primary issue at trial—whether defendant was acting in self-defense. In fact, rather than supporting defendant's theory of defense, the proposed testimony of defendant's son would

18

> have fit the prosecution's theory perfectly—that defendant attacked the complainant because the complainant disciplined his son. This would have made the prosecution's case stronger and the defense weaker, which actually supports trial counsel's strategic decision not to call defendant's son, a four-year-old child, as a witness.

*Garza*, 2020 WL 359644, at *3.

Petitioner does not respond to the court of appeals' analysis. He simply presents the same argument he made to that court. The court of appeals' findings of fact regarding the nature of the proposed testimony are presumed correct and Petitioner offers no evidence to rebut that presumption. Petitioner suggests that the testimony would have helped his self-defense claim, but he does not explain how. Petitioner appears to be convinced that he was entitled to beat the complainant in defense of his son. That is simply not the case. The appellate court's conclusion that the proposed testimony would have no bearing on whether Petitioner was acting in self-defense is unassailable—and Petitioner has not even attempted to attack it.

Petitioner has failed to show that the court of appeals' determination that counsel's failure to call the proposed witnesses was not professionally unreasonable is contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   October 2, 2020                            /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge